IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JASON GRAHAM                                                                                       PLAINTIFF

VS.                            No. 4:21-cv-01149 KGB/ PSH

KILOLO KIJAKAZI, Acting Commissioner,
   Social Security Administration                                                     DEFENDANT

### FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Plaintiff Jason Graham ("Graham") appeals the final decision of the Acting Commissioner of the Social Security Administration (defendant "Kijakazi") to deny

his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Graham maintains the Administrative Law Judge ("ALJ") erred: (1) by erroneously assessing Graham's residual functional capacity ("RFC") when the ALJ disregarded the remand order from the Appeals Council directing the ALJ to evaluate the opinions of the state agency physicians; (2) by relying on medical opinion evidence that was internally inconsistent and inherently unreliable; and (3) by improperly rejecting Graham's subjective allegations.  The parties have ably summarized the prior proceedings and testimony, which include six previous hearings and five previous ALJ decisions dating from 2012.  All of the ALJ decisions were either voluntarily remanded in this Court or remanded by decision of the Appeals Council.  The most recent ALJ decision is from August 17, 2021, and is the subject of this case.  The Court has carefully reviewed the record, including the medical records, to determine whether there is substantial evidence in the administrative record to support Kijakazi's decision.  42 U.S.C. § 405(g).  The relevant period under consideration is from September 1, 2010, the alleged onset date, through August 17, 2021, the date of the ALJ's most recent decision.

*The March 2021 Administrative Hearing:*

In the most recent of the hearings, Graham, vocational expert William Elmore ("Elmore"), and medical expert Dr. Steven Goldstein ("Goldstein") testified.

In response to questions posed by the ALJ, Graham stated he was 47 years old, 5'11", weighed 185, had a high school education, and lived with his fourteen year old daughter in a ground floor apartment. Graham indicated he once held a commercial driver's license but did not retain the license at the time of the hearing. Graham stated he worked eight hours a week, doing odd jobs[1] for an older gentleman. His last full time work was driving a forklift in 2015, a job which Graham said lasted "maybe 30 days." (Tr. 633). Since 2015, Graham had not pursued full-time work because "I just know that I'm not gonna be able to do it." (Tr. 635). Problems preventing him from working were, according to Graham, shoulder issues, lower back problems, lifting limitations, inability to use his hands, and inability to sit in one location.

Graham elaborated on his impairments. He underwent a laminectomy on his neck, saw pain doctors, took pain medications, and had injections, none of which provided relief. His lower back problems had not been addressed by medical personnel. At the time of the hearing, Graham was taking daily injections for diabetes, and his treating physician adjusted the insulin dosage as needed. Exercise was recommended for the diabetes. No medical treatment was being provided for degenerative joint disease in his feet, ankles, and knees. Carpal tunnel release surgery was performed on his right hand, but was ineffective. Due to the result on his right

---

[1] Graham described his tasks as "mostly outside work" but not mowing. (Tr. 632).

hand, Graham opted against similar surgery on his left hand. Graham testified that his hands are "like freezing up." (Tr. 638). He further claimed that vision problems impaired his ability to drive at night and to read signs during the day, but were not to the point to warrant laser surgery. A bypass graft was done to address his coronary artery disease, and "everything for now looks good." (Tr. 639). Therapy and medication were being utilized to address his anxiety, depression, and panic disorder.

Dr. Goldstein described the following as Graham's severe impairments: degenerative disc disease of the cervical and lumbar spine, diabetes, carpal tunnel syndrome, coronary artery disease, and degenerative joint disease of the ankles, knees, and feet. He termed Graham's vision issues as non-severe. He assessed Graham's RFC to be for light work with postural, manipulative, and environmental limitations.

On further questioning by his attorney, Graham stated he did not work every day. He also indicated he had suffered from diabetes since he was 12 years old and had a family history of heart disease. The diabetes affected both his eyes and kidneys. Daily activities included two naps and preparing meals and doing laundry for his daughter. Graham also used a riding mower to tend to his mother's yard. Graham previously hunted and fished, but ended these activities fifteen years earlier.

Elmore, the vocational expert, testified. The ALJ posed a question, asking him to consider a hypothetical worker of Graham's age, education, and experience who

could perform light work with the following restrictions: he could not climb ladders, ropes, or scaffolds; he could occasionally stoop, crouch, crawl, or kneel; he could occasionally reach overhead frequently[2] (Tr. 658); he could frequently bilaterally handle and finger; and he should avoid concentrated exposure to excessive vibration. Elmore testified that such a hypothetical worker could not perform Graham's past relevant work.  Elmore testified such a worker could perform some work in the national economy, such as the jobs of cashier II or sales attendant.[3]  (Tr. 657-662).

*ALJ's Decision:*

In his August 20, 2021, decision, the ALJ determined Graham had the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy status-post laminectomy and post laminectomy syndrome; degenerative disc disease of the lumbar and thoracic spine; diabetes mellitus; degenerative joint disease of ankles, feet, and right knee; bilateral carpal tunnel syndrome status-post release surgery on right hand; diabetic retinopathy; neuropathy; and coronary artery

---

[2] The wording of this limitation, with both occasional and frequent being used, is construed to limit Graham to frequent reaching overhead bilaterally, which is the limitation used by the ALJ in his decision.

[3] The ALJ altered the hypothetical question, asking Elmore if jobs existed if the hypothetical worker could do no frequent, rapid, repetitive flexion or extension of the bilateral wrists, and could do no nighttime driving.  Elmore testified that jobs were available for such a worker, including the jobs of parlor chaperone, school bus monitor, and usher.  (Tr. 660-661).

disease with angina status-post coronary artery bypass grafting. The ALJ added that Graham had other medically determinable impairments of hypertension, hypercholesterolemia, hyperthyroidism, hypogonadism, history of cut hand, and glaucoma. These impairments, according to the ALJ, were either controlled with medication or had few associated symptoms resulting in limitations.

The ALJ also determined that Graham's mental impairments of depression and anxiety, considered singly and in combination, were non-severe, as they did not cause more than minimal limitation in his ability to perform basic mental work activities. In reaching this conclusion, the ALJ considered the "paragraph B" criteria regarding mental impairments. The ALJ found Graham had no limitation in any of the four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

The ALJ found that Graham did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ cited Listings 1.02, 1.04, 1.15, 1.16, 1.18, 2.03, 4.04, and 11.14. The ALJ also discussed Graham's diabetes. Finally, the ALJ noted that Dr. Goldstein testified to finding no impairments which met or equaled the severity of any Listing. The ALJ assessed Graham to have the residual functional capacity ("RFC") to perform

a range of light work with the restrictions which mirrored those detailed in the initial hypothetical question posed to Elmore. The ALJ assessed Graham's subjective allegations, finding his statements "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 506).

The ALJ summarized the medical evidence, beginning with a March 2012 visit with a retina specialist for treatment of diabetic retinopathy. Subsequent treatment records reflected visual acuity was improved and corrected with glasses. Graham's coronary artery disease was significantly improved following bypass grafting in 2018, according to Graham's cardiologist. This was consistent with Graham's hearing testimony.

The ALJ noted the 2016 right carpal tunnel release procedure, as well as the absence of any recent medical care for this condition.

Graham's ankle, knee, and feet issues were addressed by the ALJ, citing a 2014 right knee MRI, a 2015 left ankle x-ray, and 2016 x-rays of feet, knees, and ankles. The ALJ also noted knee injections in 2020, as well as notes from the pain care provider that Graham would be discharged from care due to testing positive for methamphetamine and not responding to pill counts.

Imaging results consistently showed degenerative disc disease of Graham's cervical, thoracic, and lumbar spine. Imaging results were obtained three times in

2010, in 2015, twice in 2016, twice in 2017, and in 2019. The ALJ detailed the results of Graham's 2019 visit to the Conway Regional Neuroscience Center, where MRIs were reviewed. Graham was noted to ambulate without assistance, was not taking any pain medications, had a normal gait, and could go from sitting to standing without use of his arms with ease. In addition, Graham's primary care provider found a normal gait and no joint pain in August 2020.

Regarding diabetes, the ALJ noted poor compliance in the medical records. As previously noted, Graham testified to being advised to get more exercise.

The ALJ also reviewed the opinions offered by the state agency physicians, commenting that a great deal of additional evidence and testimony had accrued since the 2011 assessments were performed. Further, the ALJ considered Dr. Goldstein's testimony, giving "some weight" to his opinion. The ALJ differed from Dr. Goldstein, who opined that Graham had no overhead reaching limitations. Instead, the ALJ deemed limitations in this area appropriate.

The ALJ concluded that Graham was not capable of performing his past relevant work. Relying on the Elmore's testimony, the ALJ determined that Graham could perform other jobs, such as cashier II or sales attendant, that exist in significant numbers in the national economy. Accordingly, the ALJ decided Graham was not disabled. (Tr. 499-512).

*Graham's First Claim – ALJ error in evaluating his RFC by disregarding the Remand Order from the Appeals Council*

On September 23, 2020, the Appeals Council remanded the case to the ALJ with four specific directives: (1) further evaluate Graham's physical and visual impairments, following SSR 14-2p's guidance on diabetes, and obtain supplemental evidence from a medical expert on the severity and functional limitations from the impairments; (2) give further consideration to the non-treating source opinions and explain the weight given to such opinion evidence; (3) give further consideration to Graham's RFC and provide appropriate rationale in support of the assessed limitations; and (4) obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Graham's occupational base. (Tr. 813-815).

Graham takes issue with the second item identified by the Appeals Council – the directive to give further consideration to the non-treating source opinions and explain the weight given to such opinion evidence. Graham contends the ALJ repeated the error contained in two earlier ALJ decisions from October 2017 and October 2019. The Appeals Council remand order of September 23, 2020 stated:

> The hearing decision did not comply with the prior remand order. The Administrative Law Judge found the claimant has the residual functional capacity to perform a range of light work, except he can, in relevant part, occasionally reach overhead bilaterally, frequently handle bilaterally and

9

> occasionally finger bilaterally. In giving little weight to the assessments of the State agency medical consultants, the Administrative Law Judge noted that the assessments were made in 2011 and the record has been supplemented with testimony and additional medical evidence detailing the presence of more physical impairments and medically determinable, but not severe mental impairments. The State agency medical consultants opined the claimant should have no frequent, rapid, repetitive flexion extension of the wrists bilaterally and no overhead work bilaterally. The Administrative Law Judge did not provide rationale of why these more restriction limitations are not reflected in Finding 5 of the hearing decision [Finding 5 is the ALJ's RFC assessment]. This is a similar deficiency noted in the prior remand order. Further evaluation of the State agency medical consultant opinions is warranted.

(Tr. 814).

Graham is correct that the ALJ's August 2021 decision contains language similar to language in the previous decisions which resulted in a remand from the Appeals Council. The August 2021 decision again notes the state agency opinions were offered in 2011, and "a great deal of additional evidence and testimony" has accrued since that time. (Tr. 505). It also discusses Dr. Goldstein's testimony given at the March 2021 hearing. A fair reading of the decision is that the ALJ is citing some of the additional evidence and testimony which demonstrated why the details of the 2011 assessments did not find their way into the RFC determination. In addition, the ALJ explained that Graham underwent right carpal tunnel release five years after the 2011 state agency assessments, and that Graham chose not to undergo a left hand surgery. The ALJ also noted the absence of any recent medical treatment

for carpal tunnel syndrome. These citations address the concerns voiced in the remand order, and the Court finds no error in the ALJ's compliance with the Appeals Council's directives.[4]

*Graham's Second Claim – ALJ error by relying on medical opinion evidence that was internally inconsistent and inherently unreliable*

Graham contends that Dr. Goldstein's testimony, offered at both the September 2019 and March 2021 hearings, "was inherently inconsistent and unreliable." Docket entry no. 14, page 8. Graham recites Dr. Goldstein's testimony from 2019, noting that he was equivocal when asked to provide an RFC assessment. (Tr. 613-616). Graham also points out that Dr. Goldstein's 2021 testimony differed from his 2019 in certain ways. For example, his testimony regarding carpal tunnel syndrome and overhead work was not the same as his 2019 testimony. Determining how his testimony differed does not address the primary question of whether substantial evidence exists to support the ALJ's RFC opinion rendered in August 2021. It is the August 2021 decision which is at issue here, not any of the prior decisions. It is noteworthy that Dr. Goldstein acknowledged at the 2021 hearing that his testimony was based upon an

---

[4] Graham chose not to file written objections to the Appeals Council regarding the August 2021 ALJ decision, choosing instead to file this lawsuit. As a result, the ALJ's decision became the final decision of the Commissioner. As an additional result, the Appeals Council did not weigh in on the compliance or noncompliance of the ALJ with the previous remand order.

examination of the entire medical record.[5]

The ALJ is required "to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his [or her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In reaching his RFC determination, the ALJ was not obliged to fully adopt Dr. Goldstein's opinion, or the opinion of any other medical care provider. Rather, the ALJ is tasked with a global assessment, taking into account the various relevant factors. Here, the ALJ considered all the medical evidence, Graham's daily activities, the opinion of Dr. Goldstein and the state agency experts, and Graham's subjective statements. This approach was appropriate. The RFC conclusion reached by the ALJ differed somewhat from the opinion offered by Dr. Goldstein, and differed somewhat from the opinions of the state agency experts. The question is not whether the ALJ mirrored a particular opinion, but whether substantial evidence supports the ALJ's RFC finding. Such evidence exists in this case. The ALJ thoroughly addressed the relevant factors, including the reasons why he did not include greater manipulative limitations on Graham.[6] In this regard, the absence of

---

[5] Dr. Goldstein actually reviewed more of the medical records for his 2021 testimony than for his 2019 appearance. (reviewed exhibits 1F to 57F for his 2019 testimony and reviewed 1F to 72F in 2021). (Tr. 609, 641).

[6] As noted in footnote three, even if the ALJ had imposed greater manipulative limitations

recent medical treatment and the history of the carpal tunnel surgery were rightly cited. There was no error in the treatment of Dr. Goldstein's testimony, and substantial evidence was adduced to support the RFC conclusion.

*Graham's Third Claim – ALJ error by improperly rejecting Graham's subjective allegations*

The RFC determination is erroneous, according to Graham, because the ALJ improperly evaluated his subjective complaints. Graham's primary argument is that the ALJ relied solely on the medical evidence rather than properly analyzing the other relevant factors in assessing his subjective statements. While it is true that the ALJ detailed the objective medical evidence, the decision, however, cites other factors in assessing Graham's statements and determining his RFC. For example, the ALJ noted non-compliance by Graham with directions from his retina specialist Dr. David Bradford. (Tr. 507). In addition, the ALJ noted Graham's decision to forego carpal tunnel surgery on his left hand, the absence of any pain medication being taken in 2019, conservative treatment at the Conway Regional Neuroscience Center, Graham's discharge from his pain management program, poor compliance with his diabetes treatment, and his daily activities, including part-time work and caring for himself and

---

(i.e., no frequent, rapid, repetitive flexion or extension of the bilateral wrists) Elmore testified that jobs remained available.

his daughter. (Tr. 507-509). While Graham would no doubt have weighed the factors differently, the ALJ complied with the pertinent regulations in his approach, and substantial evidence supports his treatment of Graham's subjective statements.

In summary, Kijakazi's ultimate decision was supported by substantial evidence. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case

Accordingly, The Court recommends that Kijakazi's final decision be affirmed and Graham's complaint be dismissed with prejudice.

IT IS SO RECOMMENDED this 18th day of January, 2023.

_____
UNITED STATES MAGISTRATE JUDGE